## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **AMGUARD INSURANCE COMPANY** <br> 39 Public Square <br> Wilkes-Barre, PA 18703 <br>          **Plaintiff,** <br>      **v.** <br><br><br> **THE UNITED ILLUMINATING COMPANY** <br> 100 Marsh Hill Road, <br> Orange, CT 06477 <br><br> **AND** <br><br> **AVANGRID, INC.** <br> 180 Marsh Hill Road, <br> Orange, CT 06477 <br><br>      **Defendants.** | **Civil Action No.:** <br><br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, AmGuard Insurance Company, by and through its undersigned counsel, de Luca Levine LLC, hereby demands judgment against Defendant, Haier US Appliance Solutions, Inc. d/b/a GE Appliances, and in support thereof, alleges the following:

## PARTIES

1.      Plaintiff, AmGuard Insurance Company (hereinafter "AmGuard"), is a corporation organized and existing under the laws of the State of Nebraska, with its principal place of business located at 39 Public Square, Wilkes-Barre, PA 18703 and at all times material hereto was duly authorized to engage in the business of insurance in the State of Connecticut. Plaintiff is in the business of insurance and, at all times relevant hereto, was authorized to provide the insurance policy described herein.

2.      At all times relevant hereto, Plaintiff provided property insurance (*inter alia*) via a policy issued to Marc Toussaint Jean Baptiste (hereinafter the "insured") in connection with their property and located at 444 Merritt Street, Bridgeport, CT 06606 (hereinafter the "subject property"); said policy of insurance was in full force and effect at all times relevant hereto.

3.      In the wake of the incident described below, as a result of claims made on said policy (which were duly paid pursuant thereto), Plaintiff became subrogated to certain recovery rights and interests of the insured for monies paid thereunder, including the claims giving rise to this action.

4.      Defendant, The United Illuminating Company (hereinafter "UL") is a corporation existing under the laws of the State of Connecticut with its principal place of business located at 100 Marsh Hill Road, Orange, CT 06477, and was authorized to do business within the State of Connecticut. UL regularly conducts business in the State of Connecticut.

5.      At all times relevant hereto, Defendant UL was in the business of providing utility goods and services to domestic users.

6.      Defendant, Avangrid, Inc. (hereinafter "Avangrid") is a corporation existing under the laws of the State of Connecticut with its principal place of business located at 180 Marsh Hill Road, Orange, CT 06477, and was authorized to do business within the State of Connecticut. Avangrid regularly conducts business in the State of Connecticut.

7.      At all times relevant hereto, Defendant Avangrid was in the business of providing utility goods and services to domestic users.

**JURISDICTION AND VENUE**

8.      Jurisdiction is based on 28 U.S.C. § 1332(a)(1) as this action involves a controversy between citizens of different states.  Moreover, the amount in controversy exceeds

$541,833.00 (exclusive of interest and costs).

9.    Venue is proper in this district based on 28 U.S.C. § 1391(b)(1) and (2) in that the defendants reside in this district and the events giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

10.    Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

11.    Prior to April 27, 2024, and upon information and belief in 2021, Defendants, UL and Avangrid (hereinafter collectively referred to as "Defendants") installed a smart meter in the basement of the subject property.

12.    Upon information and belief, the subject meter is connected via an exterior electrical metal conduit which runs from the roof down the right side of the home to an "L" type elbow that turned the conduit into the basement interior to the meter box.

13.    On or about April 27, 2024, a fire erupted on the exterior of the subject property resulting in extensive damage to the subject property.

14.    A subsequent investigation conducted after the loss determined the aforesaid fire and resulting damage was caused by the degradation of wire within the metal conduit from water intrusion.

15.    The investigation further revealed significant rusting in the bottom of the "L" type elbow, as well as on the rear and bottom of the subject meter in the basement of the subject property.

16.    The Defendants had actual notice of the dangerous condition of the rusting and water intrusion, which would have been openly apparent during the 2021 installation of the subject

meter, which eventually caused the fire incident and resulting property damage of which Plaintiff now complains.

17.     The Defendants had constructive notice of the dangerous condition of the rusting and water intrusion, which would have been openly apparent during the 2021 installation of the subject meter, which eventually caused the fire incident and resulting property damage of which Plaintiff now complains.

18.     At all relevant times, the Defendants had exclusive possession and control over the subject meter and associated electrical conduit connected to the subject property arising out of its ownership of the electrical system on their property.

19.     The Defendants were exclusively responsible for maintaining, monitoring, inspecting, servicing, repairing and/or replacing its meter and associated electrical conduit at Plaintiff's insured's property in a safe, reasonable manner and in accordance with the National Electric Safety Code and applicable industry standards at all times material.

20.     Despite having notice of the aforementioned dangerous condition, the Defendants never took any steps towards inspecting, servicing, or otherwise maintaining the subject meter and associated electrical conduit to prevent hazardous conditions.

21.     As a direct and proximate result of the aforementioned negligent action/inactions of the Defendants, Plaintiff's insured sustained damages to their real and personal property in amounts well in excess of $500,000.00, as well as the imposition of additional expenses and hardship as a result of the fire incident.

<u>**COUNT I – NEGLIGENCE**</u>
<u>**PLAINTIFF v. THE UNITED ILLUMINATING COMPANY**</u>

22.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

23. Defendant, UL, as a commercial seller of electricity and electrical services, owed the public at large, including and especially Plaintiff's insured, a duty of reasonable care at all relevant times, which included a duty to inspect, repair and/or otherwise maintain its subject meter and associated electrical conduit in a manner and condition necessary for its safe operation so as to not cause harm or damage to others.

24. Defendant, UL breached its duty to Plaintiff's insured – by and through its agents, servants, workmen, employees and/or chosen subcontractors acting within the course and scope of their employment and agency – when it failed to properly monitor, maintain, inspect, investigate, remedy, test, respond to conditions, service and/or timely remove the subject meter and associated electrical conduit so as to prevent the fire at the subject property.

25. Defendant, UL knew or should have known that its failure to properly monitor, maintain, inspect, investigate, remedy, test, respond to conditions, service and/or timely repair the above-mentioned system would cause a fire to spark from its meter and associated electrical conduit, resulting in considerable property damage to structures and property in close proximity thereto.

26. Defendant, UL's negligence and other unlawful actions and/or omissions – by and through its agents, servants, workmen, employees and/or chosen subcontractors acting within the course and scope of their employment and agency – consisted of, but is not limited to, the following:

    a. failing to properly and adequately investigate, inspect, maintain, service, replace, monitor, remedy and/or timely remove the aforementioned dangerous condition;

    b. failing to properly train, supervise and/or instruct its workmen, employees, agents, servants and/or subcontractors in the adequate, proper and safe

maintenance, inspection, service and/or removal of the aforementioned dangerous condition;

c. creating, maintaining and/or permitting the subject service drop to be maintained and/or operated in a hazardous, dangerous and defective condition;

d. failing to exercise due care with regard to the rights and safety of the Plaintiff's insured under the circumstances, by failing to either warn or remove the aforementioned dangerous condition and by allowing the condition to exist after receiving either actual or constructive notice of it;

e. failing to hire competent and capable personnel to detect and respond to the emergency conditions giving rise to the damages described;

f. failing to take necessary precautions to protect the Plaintiff's insured by timely notifying, warning and/or alerting necessary parties of the existence of the dangerous conditions giving rise to the damages described; and/or

g. failing to take all reasonable and necessary precautions to prevent and protect against the damages described herein, consistent with all applicable regulations, regulatory commitments, standards of care, customs, and industry practices.

27. Alternatively, Defendant, UL failed to promulgate, maintain and disseminate appropriate policies, procedures and protocols that, if in place, would have led to the detection and correction of the dangerous condition that caused the fire in a timely manner so as to avoid the harm Plaintiff's insured sustained.

28. As a direct and proximate result of the aforementioned negligent action/inactions of Defendant, UL, Plaintiff's insured sustained and incurred damage to their real and personal property in amounts well in excess of $500,000.00, and caused other consequential and incidental damages including additional living expenses, clean-up costs, repair, as well as other associated expenses.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant, The United Illuminating Company jointly, severally, and/or in the alternative with other defendant(s) herein -

for damages in an amount in excess of $500,000.00, plus costs incident to this suit, interest and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

<u>**COUNT II– STRICT PRODUCTS LIABILITY**</u>
<u>**PLAINTIFF VS. THE UNITED ILLUMINATING COMPANY**</u>

29.    Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

30.    Defendant, UL is engaged, and at all times relevant hereto was engaged, in the business of inter alia, marketing, manufacturing, installing, selling, servicing, warranting, and distributing electric utility services, including the type of electricity utility services involved here, to consumers such as Plaintiff's insured.

31.    Defendant, UL knew, and intended, that the electrical utility services would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which said product would be utilized.

32.    Defendant, UL distributed and/or sold the electricity in a defective condition, unreasonably dangerous to Plaintiff's insured and its property, which ultimately led to a catastrophic failure and/or malfunction.

33.    Defendant, UL knew or should have known that the electrical services would, and did, reach the Plaintiff's insured without substantial change from the condition in which originally sold.

34.    Plaintiff's insured, who was an ordinary consumer, never expected the electrical services would be unsafe or unreasonably dangerous.

35.    The aforementioned defects consisted of:

    a.    design defects;

b.       inadequate safeguards and protections in the event of a bus cable failure;

c.       component defects;

d.       a failure to warn of the above defects; and/or

e.       a failure to properly instruct as to the appropriate installation, operating and maintenance procedures for safe use of the electricity.

36.     The defective electricity passed through the subject meter and associated electrical conduit before causing the fire at their property.

37.     For these reasons, Defendant, UL is strictly liable to Plaintiff for damage under Section 402 of the Restatement (2d) of Torts, and the applicable statutory and case law of the State of Connecticut.

38.     As a direct and proximate result of the aforementioned negligent, reckless and wanton action/inactions of Defendant, UL, Plaintiff's insured sustained damages to their real and personal property of at least in the amount of $500,000.00 as well as the imposition of additional expenses and hardship as a result of the fire incident.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant, The United Illuminating Company jointly, severally, and/or in the alternative with other defendant(s) herein - for damages in an amount in excess of $500,000.00, plus costs incident to this suit, interest and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

<u>**COUNT III - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE PLAINTIFF VS. THE UNITED ILLUMINATING COMPANY**</u>

39.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

40.     In conjunction with the sale and distribution of electricity, Defendant, UL expressly and implicitly warranted that it would be free from defects, merchantable and safe to use for its general and intended purposes.

41.     At the time of contracting for the sale and/or distribution of the electricity, Defendant, UL had reason to know the particular purpose to which the electricity would be used and knew that its skill and judgment was being relied upon to furnish a suitable product.  Thus, Defendant, UL breached the implied warranty of fitness for a particular purpose in that the subject product was not fit for the particular purpose for which such products are required.

42.     In addition, Defendant, UL breached its implied warranty of merchantability in that the subject product was not fit for the ordinary uses for which the subject product was used.

43.     In addition, Defendant, UL breached any and all express warranties made or relating to the subject property that became part of the basis of the bargain for sale of the product.

44.     Plaintiff's insured's damages occurred as a direct and proximate result of Defendant, UL's breach of its implied warranties of fitness for a particular purpose and merchantability.

45.     Based upon the above, Defendant, UL breached these implied and/or statutory warranties, as well as express warranties provided with the product.

46.     As a direct and proximate result of such breach(es), Plaintiff's insured sustained and incurred damage to personal property, as well as the imposition of additional expenses and hardship, in the amount of at least $500,000.00.

47.     Plaintiff's insured had and has performed all conditions precedent to recover based upon such breaches. As a direct and proximate result of the aforementioned negligent, reckless and wanton action/inactions of $500,000.00, Plaintiff's insured sustained damages to their real and

personal property of at least in the amount of $500,000.00 as well as the imposition of additional expenses and hardship as a result of the fire incident.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant, The United Illuminating Company jointly, severally, and/or in the alternative with other defendant(s) herein - for damages in an amount in excess of $500,000.00, plus costs incident to this suit, interest and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT IV – NEGLIGENCE**
**PLAINTIFF v. AVANGRID, INC.**

48.    Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

49.    Defendant, Avangrid, as a commercial seller of electricity and electrical services, owed the public at large, including and especially Plaintiff's insured, a duty of reasonable care at all relevant times, which included a duty to inspect, repair and/or otherwise maintain its subject meter and associated electrical conduit in a manner and condition necessary for its safe operation so as to not cause harm or damage to others.

50.    Defendant, Avangrid breached its duty to Plaintiff's insured – by and through its agents, servants, workmen, employees and/or chosen subcontractors acting within the course and scope of their employment and agency – when it failed to properly monitor, maintain, inspect, investigate, remedy, test, respond to conditions, service and/or timely remove the subject meter and associated electrical conduit so as to prevent the fire at the subject property.

51.    Defendant, Avangrid knew or should have known that its failure to properly monitor, maintain, inspect, investigate, remedy, test, respond to conditions, service and/or timely repair the above-mentioned system would cause a fire to spark from its meter and associated

electrical conduit, resulting in considerable property damage to structures and property in close proximity thereto.

52.    Defendant, Avangrid's negligence and other unlawful actions and/or omissions – by and through its agents, servants, workmen, employees and/or chosen subcontractors acting within the course and scope of their employment and agency – consisted of, but is not limited to, the following:

a.  failing to properly and adequately investigate, inspect, maintain, service, replace, monitor, remedy and/or timely remove the aforementioned dangerous condition;

b.  failing to properly train, supervise and/or instruct its workmen, employees, agents, servants and/or subcontractors in the adequate, proper and safe maintenance, inspection, service and/or removal of the aforementioned dangerous condition;

c.  creating, maintaining and/or permitting the subject service drop to be maintained and/or operated in a hazardous, dangerous and defective condition;

d.  failing to exercise due care with regard to the rights and safety of the Plaintiff's insured under the circumstances, by failing to either warn or remove the aforementioned dangerous condition and by allowing the condition to exist after receiving either actual or constructive notice of it;

e.  failing to hire competent and capable personnel to detect and respond to the emergency conditions giving rise to the damages described;

f.  failing to take necessary precautions to protect the Plaintiff's insured by timely notifying, warning and/or alerting necessary parties of the existence of the dangerous conditions giving rise to the damages described; and/or

g.  failing to take all reasonable and necessary precautions to prevent and protect against the damages described herein, consistent with all applicable regulations, regulatory commitments, standards of care, customs, and industry practices.

53.     Alternatively, Defendant, Avangrid failed to promulgate, maintain and disseminate appropriate policies, procedures and protocols that, if in place, would have led to the detection and correction of the dangerous condition that caused the fire in a timely manner so as to avoid the harm Plaintiff's insured sustained.

54.     As a direct and proximate result of the aforementioned negligent action/inactions of Defendant, Avangrid, Plaintiff's insured sustained and incurred damage to their real and personal property in amounts well in excess of $500,000.00, and caused other consequential and incidental damages including additional living expenses, clean-up costs, repair, as well as other associated expenses.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant, Avangrid, Inc. jointly, severally, and/or in the alternative with other defendant(s) herein - for damages in an amount in excess of $500,000.00, plus costs incident to this suit, interest and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

### COUNT V– STRICT PRODUCTS LIABILITY
### PLAINTIFF VS. AVANGRID, INC.

55.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

56.     Defendant, Avangrid is engaged, and at all times relevant hereto was engaged, in the business of inter alia, marketing, manufacturing, installing, selling, servicing, warranting, and distributing electric utility services, including the type of electricity utility services involved here, to consumers such as Plaintiff's insured.

57.     Defendant, Avangrid knew, and intended, that the electrical utility services would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which said product would be utilized.

58.     Defendant, Avangrid distributed and/or sold the electricity in a defective condition, unreasonably dangerous to Plaintiff's insured and its property, which ultimately led to a catastrophic failure and/or malfunction.

59.     Defendant, Avangrid knew or should have known that the electrical services would, and did, reach the Plaintiff's insured without substantial change from the condition in which originally sold.

60.     Plaintiff's insured, who was an ordinary consumer, never expected the electrical services would be unsafe or unreasonably dangerous.

61.     The aforementioned defects consisted of:

a.     design defects;
b.     inadequate safeguards and protections in the event of a bus cable failure;
c.     component defects;
d.     a failure to warn of the above defects; and/or
e.     a failure to properly instruct as to the appropriate installation, operating and maintenance procedures for safe use of the electricity.

62.     The defective electricity passed through the subject meter and associated electrical conduit before causing the fire at their property.

63.     For these reasons, Defendant, Avangrid is strictly liable to Plaintiff for damage under Section 402 of the Restatement (2d) of Torts, and the applicable statutory and case law of the State of Connecticut.

64.     As a direct and proximate result of the aforementioned negligent, reckless and wanton action/inactions of Defendant, Avangrid, Plaintiff's insured sustained damages to their real and personal property of at least in the amount of $500,000.00 as well as the imposition of additional expenses and hardship as a result of the fire incident.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant, Avangrid, Inc. jointly, severally, and/or in the alternative with other defendant(s) herein - for damages in an amount in excess of $500,000.00, plus costs incident to this suit, interest and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

<u>COUNT VI - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY OR<br>FITNESS FOR A PARTICULAR PURPOSE<br>PLAINTIFF VS. AVANGRID, INC.</u>

65.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

66.     In conjunction with the sale and distribution of electricity, Defendant, Avangrid expressly and implicitly warranted that it would be free from defects, merchantable and safe to use for its general and intended purposes.

67.     At the time of contracting for the sale and/or distribution of the electricity, Defendant, Avangrid had reason to know the particular purpose to which the electricity would be used and knew that its skill and judgment was being relied upon to furnish a suitable product.  Thus, Defendant, Avangrid breached the implied warranty of fitness for a particular purpose in that the subject product was not fit for the particular purpose for which such products are required.

68.     In addition, Defendant, Avangrid breached its implied warranty of merchantability in that the subject product was not fit for the ordinary uses for which the subject product was used.

69.     In addition, Defendant, Avangrid breached any and all express warranties made or relating to the subject property that became part of the basis of the bargain for sale of the product.

70.     Plaintiff's insured's damages occurred as a direct and proximate result of Defendant, Avangrid's breach of its implied warranties of fitness for a particular purpose and merchantability.

71.     Based upon the above, Defendant, Avangrid breached these implied and/or statutory warranties, as well as express warranties provided with the product.

72.     As a direct and proximate result of such breach(es), Plaintiff's insured sustained and incurred damage to personal property, as well as the imposition of additional expenses and hardship, in the amount of at least $500,000.00.

73.     Plaintiff's insured had and has performed all conditions precedent to recover based upon such breaches. As a direct and proximate result of the aforementioned negligent, reckless and wanton action/inactions of $500,000.00, Plaintiff's insured sustained damages to their real and personal property of at least in the amount of $500,000.00 as well as the imposition of additional expenses and hardship as a result of the fire incident.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant, Avangrid, Inc. jointly, severally, and/or in the alternative with other defendant(s) herein - for damages in an amount in excess of $500,000.00, plus costs incident to this suit, interest and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**de LUCA LEVINE LLC**

BY: _____

**THADDEUS S. KIRK** (ct31308)
301 E. Germantown Pike, Suite 300
East Norriton, PA  19401
215-383-0081
215-383-0082 (fax)
tkirk@delucalevine.com
**ATTORNEYS FOR PLAINTIFF**

**Dated:**  April 24, 2026